[L. A. No. 2270. Department Two.—September 6, 1910.]

B. P. CHENEY, Appellant, v. C. A. CANFIELD and the MEXICAN PETROLEUM COMPANY (a Corporation), Respondents.

CORPORATIONS—LEVY OF ASSESSMENT—LEGALITY—MEETINGS OF DIRECTORS—SPECIAL MEETING IRREGULARLY CALLED—VOID ASSESSMENT.

—An assessment can be legally levied upon the capital stock of a corporation by its board of directors only at a regular meeting of the board, or at a special meeting regularly called. Where an assessment was levied at no regular meeting, but at a special meeting not regularly called in pursuance of the by-laws of the corporation, it was illegal and void.

ID.—PROCEEDINGS IN INVITUM—FORFEITURE OF STOCK—STRICT COMPLIANCE WITH LAW AND CHARTER ESSENTIAL.—As all proceedings whereby an assessment is levied upon the stock of a corporation, under which a forfeiture of stock may be had, are *in invitum,* they must be strictly followed. The levy of such an assessment can only be accomplished by a strict compliance with the statutory provisions relative thereto, or with the provisions of the charter of the corporation upon the subject.

ID.—REGULAR MONTHLY MEETING FALLING ON HOLIDAY.—MEETING NEXT DAY IRREGULAR—CODE SECTION INAPPLICABLE.—The fact that the first Monday of the month fixed by the by-laws of the corporation for the regular monthly meeting of the directors fell on a legal holiday, there being nothing in the by-laws providing for such an event, did not warrant the board in holding a regular meeting on the following Tuesday, under section 11 of the Civil Code, the provisions of which do not apply to the case.

ID.—CODE SECTION NOT MANDATORY—ACT APPOINTED BY "LAW OR CONTRACT."—Section 11 of the Civil Code, providing that "whenever an act of a secular nature, . . . is appointed by law or contract to be performed upon a particular day, which day falls upon a holiday, it may be performed upon the next business day with the same effect as if it had been performed upon the day appointed" is not mandatory, but permissive as to an act appointed by "law or contract."

ID.—BY-LAW OF CORPORATION NOT A "LAW OR CONTRACT."—A by-law of a corporation fixing the time for the monthly meeting of the directors, is not a "law or contract" within the meaning of section 11 of the Civil Code.

ID.—MEANING OF CODE SECTION AS TO "LAW."—In speaking of an act provided by "law" to be performed, section 11 of the Civil Code, in so far as it refers to "law," means such an act as is required to be performed within a given time by some statutory provision or rule of law.

ID.—MEANING OF SECTION AS TO "CONTRACT."—In speaking of an act to be performed by "contract" the code section means contracts such as are defined by sections 1549 and 1550 of the Civil Code, consisting of actual contracts entered into between all the parties,— contracts which are definitely such, and by the terms of which conditions or provisions are to be complied with by the parties within a specified time, with a possible forfeiture of rights thereunder for non-compliance.

ID.—MEANING OF "BY-LAW"—"CONTRACT" NOT INVOLVED.—The term "by-law" has a well-known, but limited and peculiar meaning. It is

used to designate those regulations which, as some of its legal incidents, a corporation is empowered to make affecting the management of its business, the control of its officers and agents, and the rights and duties of its members between themselves and the corporation. By-laws are passed not as contracts, with the consent of all parties, but by a bare majority of the stockholders; and, while in a general sense the by-laws with the articles of incorporation constitute a contract under which the reciprocal rights and duties of the corporation and its stockholders are measured; yet the by-laws of themselves do not constitute a "contract" within the contemplation of the code section.

ID.—PURPOSE OF CODE SECTION LIMITED—MEETING FALLING ON HOLIDAY NOT INCLUDED.—The purpose of the code section was in aid of the preservation of rights either under a "law" or "contract" which might by the intervention of a holiday be imperiled. It was not intended, and cannot be construed, to apply to the time for holding meetings of the board of directors, so as to authorize stated meetings to be held at a date other than fixed in the by-laws, simply because that date falls on a holiday.

ID.—POWER AND DUTY OF DIRECTORS TO MEET ON HOLIDAY FOR REGULAR MEETING.—It was entirely permissible for the board of directors to meet on the date fixed for the regular meeting, though it fell on a holiday, and the by-laws required it to do so. There was nothing in the general law or in the by-laws prohibiting such meeting because the date fixed fell on a holiday. It was a matter of their own volition whether the board should meet on the day stated in the by-laws, although their duty was to do so.

ID.—INVALID ADJOURNED MEETING FROM PREVIOUS MONTH—VOTE OF LESS THAN QUORUM.—A vote of less than a quorum of the board can perform no lawful acts, and such a vote could not lawfully adjourn the meeting of the previous month to meet on the day following the next regular business meeting.

ID.—INVALID SPECIAL MEETING ON DAY AFTER REGULAR MEETING—NOTICE NOT GIVEN—VOID ASSESSMENT.—Where there was no meeting held on the day fixed for the regular meeting, and no notice was given to absent members of a meeting on the following day, a meeting so held was neither a regular meeting nor a valid special meeting, and an assessment levied thereat was illegal and void.

ID.—ACTION TO AVOID SALE OF STOCK UNDER VOID ASSESSMENT—CODE SECTIONS INAPPLICABLE—IRREGULARITY NOT INVOLVED.—An action to avoid a sale of stock under a void assessment is not subject to the provisions of section 347 of the Civil Code, and section 341 of the Code of Civil Procedure, limiting an action to recover stock sold for a delinquent assessment, upon the ground of irregularity in the assessment, notice of sale or sale, to six months, and conditioning the action upon the tender required in section 347 of the Civil Code. Those sections are inapplicable to a sale under a void

assessment, which is consequently void, and no question of mere irregularity is involved in the action to avoid such sale.

ID.—ACTION COMMENCED TWO YEARS AFTER VOID SALE—FINDING OF LACHES UNSUPPORTED.—Where the action was commenced about two years after the void sale of the stock, it is held that there is no evidence upon which a finding of laches in bringing the action can be sustained.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial. George H. Hutton, Judge.

The facts are stated in the opinion of the court.

Hunsaker, Britt & Fleming, and Hunsaker & Britt, for Appellant.

Ward Chapman, and O'Melveney, Stevens & Milliken, for Respondents.

LORIGAN, J.—This action was brought by plaintiff to have a sale by the defendant corporation of forty-one thousand six hundred and sixty-six shares of defendant's corporate stock of which he claimed to be the owner declared void. The sale was made for a delinquent assessment and defendant Canfield is the purchaser and holder of the stock.

The defendants had judgment and plaintiff appeals therefrom and from an order denying his motion for a new trial.

One of the main points presented for consideration here is the validity of the assessment upon which the sale of the stock was based. All the proceedings eventuating in the sale of the stock in question are based upon an assessment levied by defendant's board of directors on September 6, 1904.

It is insisted by appellant that the levy of this assessment was void for several reasons, but principally on the ground that the board of directors, he asserts, had no authority to levy it because the meeting at which they did so was neither a regular meeting of the board nor a special meeting regularly called.

It is the settled law that an assessment can be legally levied upon the capital stock of a corporation by the board of directors only at a regular meeting of the board or at a special meeting thereof regularly called. (*Harding* v. *Vanderwater,* 40 Cal. 78; *Thompson* v. *Williams,* 76 Cal. 155, [9 Am. St. Rep. 187, 18 Pac. 153].)

As all proceedings whereby an assessment is levied upon the
stock of a corporation, and under which a forfeiture of the
stock of the stockholders may be had are *in invitum,* it is ele-
mentary law that they must be strictly followed. The levy of
such an assessment can only be accomplished legally by a strict
compliance with the statutory provisions relative thereto, or
with the provisions of the charter of the corporation upon the
subject. (*Herbert Kraft Co. Bank* v. *Orland,* 133 Cal. 64, [65
Pac. 143] ; *Ruck* v. *Caledonia Silver Mining Co.,* 6 Cal. App.
356, [92 Pac. 194].)

The by-laws of the defendant corporation provide that regu-
lar meetings of its board of directors shall be held on the first
Monday of each month and special meetings may be called at
any time, notice thereof to be given the directors personally or
by mail. It was averred in the complaint that the meeting of
the board of directors of September 6, 1904, at which the as-
sessment was levied was held at a time and on a day other than
the time provided by the by-laws of the corporation and with-
out previous or any notice to the members of the board; in
effect that the meeting at which the levy was made was neither
a regular meeting of the board nor a special meeting regu-
larly convened. This was denied in the answer and the court
found that the board of directors of the corporation consisted
of nine members and that "the meeting of the board of direc-
tors on September 6, 1904, was held without any specific notice
to the other two members of the said board, there being at said
meeting but seven present, but it is provided by the by-laws
of the Mexican Petroleum Company that regular monthly
meetings of the said directors . . . shall be held on the first
Monday of each month and that no notice of said meeting is
required, and the first Monday of September of the year 1904
was the 5th day of September and was under the laws of the
state of California a legal holiday. And when the board met
on the said first Monday of September, 1904, no business was
transacted because of its being a holiday and the board met
on the following day and said assessment was levied and other
business transacted. Prior to the said 6th day of September,
1904, said board of directors at a meeting adjourned from
the regular monthly meeting in August met and there being no
quorum present adjourned said meeting to the 6th day of
September, 1904." On this finding the trial court based its

conclusion that the meeting of the board of directors on September 6, 1904, was a valid one and the assessment legally levied, being of the opinion, first, that although the by-laws of the corporation provided for a regular meeting of the board on September 5, 1904, which was the first Monday of the month, yet as that date fell on a legal holiday the board might meet on the following day with equal regularity and legal effect under section 11 of the Civil Code; secondly, that whether it could or not, still the meeting on September 6, 1904, was a regular and valid meeting of the board because it was then held on the date to which the regular monthly meeting of the board in the August previous had been adjourned.

We do not think either of these conclusions correct. The fact that the first Monday of the month, fixed by the by-laws for the regular monthly meeting of the board of directors, fell on a holiday did not warrant the board in meeting on the following Tuesday on the theory that under the section of the code it could then hold the regular monthly meeting. The by-laws did not so provide and section 11 of the Civil Code which is invoked to uphold the validity of the meeting on that day has no application. That section provides that "whenever an act of a secular nature . . . is appointed by law or contract to be performed on a particular day, which falls upon a holiday, it may be performed upon the next business day with the same effect as if it had been performed upon the day appointed."

It will be observed that there is nothing mandatory about the provision. Even as applied to an act appointed by "law or contract" to be performed upon a given day, it is merely permissive. It may or may not be done on the appointed day as the party to perform it chooses or an opportunity presents. The section, however, even in its permissibility only applies to an act appointed by "law or contract" to be performed. While the by-laws of the corporation under discussion fix the first Monday of each month for holding the regular meetings of the board of directors, still a by-law is not a "law or contract" within the meaning of the code section.

In speaking of an act provided by "law or contract" to be performed the section, in as far as it refers to "law" means such an act as is required to be performed within a given time by authority of some statutory provision or rule of law. A

provision similar to the one in the Civil Code is found in both the Code of Civil Procedure (sec. 13) and the Political Code (sec. 13).

When the section of the code relied on speaks of an act to be performed by "contract" it means contracts such as are defined by sections 1549 and 1550 of the Civil Code itself. Actual contracts entered into between all the parties; contracts which are definitely such and by the terms of which conditions or provisions are to be complied with by the parties within a specified time with a possible forfeiture of rights thereunder for non-compliance. The term "by-law" has a well-known but limited and peculiar meaning. It is used to designate those regulations which as one of its legal incidents, a corporation is empowered to make affecting the management of its business, the control of its officers and agents, and the rights and duties of the members of the corporation between themselves and between the corporation. To pass and make effective such by-laws the consent of all parties, as in actual and ordinary contracts, is not necessary as a bare majority of the stockholders of the corporation may do so. (Civ. Code, sec. 301.) While in a general sense the by-laws with the articles of incorporation constitute a contract under which the reciprocal rights and duties of the corporation and its stockholders are measured, the by-laws of themselves do not constitute such a contract so as to make the provision with reference to directors' meetings an act to be performed under a contract within the contemplation of the code section.

The duty of the board of directors to hold its regular meetings at stated times did not spring from any contract between them and the corporation but arose from a provision of the by-laws passed for the purpose of properly conducting the business of the corporation. To whatever extent the by-laws may, for certain purposes, be considered as part of a contract between the corporation and its stockholders defining their respective duties and rights as far as a provision therein declares when and how directors' meetings shall be held, it is simply what it purports to be—a by-law; a regulation pertaining to the administration of the busines of the corporation and in no sense a contract.

The extent and purpose of the code provision is quite apparent. It is to extend the time for the performance of some

act which is expressly enjoined by law to be performed by a given time which would fall upon a holiday; or to protect, relieve, or save one contracting party from a forfeiture or deprivation of a right by the other contracting party on account of non-compliance with the terms of a contract when non-compliance might be impracticable or impossible by reason of the required date of performance falling on a holiday. The purpose of the section was in aid of the preservation of rights, either under a law or contract, which might by the intervention of a holiday be imperiled, and was not intended and cannot be construed to mean, as is claimed in the present instance, to apply to the time for holding meetings of the board of directors so as to authorize stated meetings to be held at a date other than fixed in the by-laws simply because that date falls on a holiday.

It was entirely permissible for the board of directors to meet on the date fixed for its regular meeting and the by-laws required it to do so. There was nothing in the general law or in the by-laws prohibiting such meeting because the date fixed fell on a holiday. It was a matter of their own volition whether the members of the board should meet or not on the date stated, although their duty was to do so. The regular meeting of the board was not an act required to be performed by contract and the board had no authority to meet at any other time than that fixed by the by-laws unless upon notice to all the directors, and as the meeting here in question was not held on the date fixed and was subsequently held without notice to two of the directors such meeting was not legally held; the board so assembled was without authority to act at all and the assessment here in question levied at that meeting was void unless the meeting can be held valid on other grounds.

It will be observed that the court in addition to the finding we have just discussed found also that "when the board met on the said first Monday of September, 1904, no business was transacted because of its being a holiday and the board met on the following day and said assessment was levied and other business transacted."

As to this finding there is no evidence that the board or any members of it met on the first Monday of September. In fact, in a note made in the minutes of the board by the secretary of

the corporation it is evident that they did not meet at all. This is immaterial, however, as it is not pretended that if they did hold a meeting on that day they adjourned it over until the next day, September 6th, when the assessment was levied. If they met on the first Monday as there was no adjournment over, the meeting on the next day without notice to all the directors was invalid.

Now as to the position that the meeting of September 6th can be sustained as an adjourned meeting of an adjourned meeting of the regular monthly meeting of the August previous.

It might be an interesting question whether even a quorum of a board can make successive adjournments of a previous regular meeting so that the last adjournment would be to a date beyond that fixed for the next regular meeting of the board by the by-laws, as appears to have been attempted here, but by less than a quorum of the board. Discussion of that proposition, however, is unnecessary because at the meeting in August when it is claimed that an adjournment was made until September 6th there was no quorum of the board present. The by-laws of the corporation provided that a quorum should consist of five members, while in fact there were but two members of the board present when the adjournment was attempted to be made and they alone assumed to order it. There can be no question but that less than a quorum of a board of directors have no authority to adjourn a meeting to any date whatever. It was so held in *Raisch* v. *M. K. & T. Oil Co.* by our district court of appeal, 7 Cal. App. 667, [95 Pac. 662]. The question there, as here, involved the validity of an assessment upon corporate stock. In the case referred to, the board levied it on a day to which less than a quorum thereof had at a previous meeting adjourned such meeting. It was held by the district court of appeal that less than a quorum of the board could not effect a valid adjournment. The court, after discussing the reasons why such power may not rest with less than a quorum, says: "The code provides that the corporate powers, business and property of all corporations must be exercised, conducted and controlled by a board of directors; that a majority of the directors is a sufficient number to form a board for the transaction of business; and that every decision of a majority

of the directors ·forming such board, made when duly assembled, is valid as a corporate act. (Civ. Code, sec. 308.) It is provided that 'Unless a quorum is present and acting, no business performed *or act done* is valid as against the corporation.' (Civ. Code, sec. 305.) The adjournment was an act done, and hence, under the express provisions of the code, it was not a valid act. It is significant in this connection that there is no provision of the code to which our attention has been called authorizing a meeting of the directors of a corporation to be adjourned by a minority. . . . Counsel have been unable to cite us to any authority, either in this state or elsewhere, directly in point. We have examined the cases cited, but find nothing to aid us in the solution of the question involved here. We therefore conclude there was no power in the minority of the board of directors to adjourn the time of holding the regular meeting, and that the assessment was levied without authority, and is therefore void."

We think there can be no question but that the rule as announced by the district court of appeal is the correct one and in harmony with it the attempt of less than a quorum of the board of directors of the defendant corporation to adjourn the August meeting over to September 6th was ineffectual for any purpose and the meeting on this latter date was invalid.

The court found that the plaintiff was guilty of laches in bringing his action and also that his right of action was barred by section 347 of the Civil Code and section 341 of the Code of Civil Procedure. Both these code sections referred to make· the same provision, namely, that "no action must be sustained to recover stock sold for delinquent assessment upon the ground of irregularity of the assessment . . ." unless the tender of the amount for which the stock was sold at said time and unless such action is commenced within six months after the sale of the stock. The sale of the stock in question here was made December 20, 1904; this action was commenced January 4, 1906.

The sections referred to only apply where there has been some irregularity in the assessment or irregularity or defect in the notice of sale or the sale itself. The assessment in question here, as we have seen, was not merely an irregular assessment, it was absolutely void. (*Herbert Kraft Co. Bank*

v. *Orland,* 133 Cal. 64, 66, [65 Pac. 143].)    Hence, these sections have no application.

There is nothing in the evidence upon which the finding of laches can be sustained.

The judgment and order appealed from are reversed.

Henshaw, J., and Melvin, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.